# EXHIBIT A


**CAMICO**

## DECLARATIONS

### ACCOUNTANTS PROFESSIONAL LIABILITY INSURANCE POLICY

Policy Number:  SCL103936-06

| | | |
|---|---|---|
| Effective Date: | 01/28/2011 | at 12:01 A.M. Standard time at the address shown below |
| Expiration Date: | 01/28/2012 | at 12:01 A.M. Standard time at the address shown below |
| Retroactive Date: | 07/01/1998 | |

Item 1 - Named Insured:     Jackson & Hill, LLC

Item 2 - Business Address:     721 Long Point Road, Suite 404

Mt. Pleasant, SC 29464

| Item 3 - Limits of Liability: | $1,000,000 | Per Claim |
|---|---|---|
| | $2,000,000 | Policy Aggregate |
| Item 4 - Deductibles: | $5,000 | Per Claim Deductible |

Item 5 - Total Premium:     $4,865

Item 6 - The policy consists of this Declarations page, and the following policy forms and endorsements:

| | |
|---|---|
| PL-1000-A | Accountants Professional Liability Insurance Policy |
| PL-2030-A (SC) | State Endorsement - South Carolina |
| PL-1005-A | Employment Practices Defense Endorsement |
| PL-1015-A | Separate Defense Limit |
| PL-1026-A | Limited Coverage for Known Claims |

NOTICE OF TERRORISM INSURANCE COVERAGE: Coverage for acts of terrorism as defined under the Terrorism Risk Insurance Act of 2002 ("TRIA") is already included in your current policy. You should know that, effective November 26, 2002, under your existing coverage, any losses caused by certified acts of terrorism would be partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible paid by CAMICO Mutual Insurance Company. The portion of your annual premium that is attributable to coverage for acts of terrorism is: $0.

**PLEASE READ THESE DECLARATIONS, THE POLICY AND ENDORSEMENTS CAREFULLY.**

**CAMICO Mutual Insurance Company**

_____
Authorized Representative



# CAMICO

## ACCOUNTANTS PROFESSIONAL LIABILITY INSURANCE POLICY





CAMICO Mutual Insurance Company
Tel: 800.652.1772

## ADDITIONAL INCLUDED BENEFITS

In addition to the benefits described in your policy every *Named Insured* automatically qualifies for additional included benefits designed to minimize your professional liability exposure by helping you manage your firm. These additional included benefits are:

- Unlimited use of CAMICO's three hotlines, providing immediate access to professional assistance and advice. This service includes the **Loss Prevention hotline**, providing CPAs and other professionals that can assist you with practice and firm management issues, the **Claims hotline**, providing claim professionals that can assist you with legal liability concerns *before* they become a claim and the **Tax hotline**, providing CPAs and attorneys to assist you with some federal tax issues.

- Unlimited use of CAMICO's **subpoena services**, providing assistance with the receipt of and compliance with most types of subpoena and deposition notices even when there is no Claim. CAMICO will evaluate the need for additional assistance and, where appropriate, attorneys may be provided to assist you at no cost. **Subpoena services** are accessed through the **Claims hotline.**

- Unlimited access to all of CAMICO's risk management tools and documents through the **Members Only section of CAMICO.com**.

- Full participation in all of CAMICO's **CPE events**, including seminars, conferences, in-firm training and web-based training. (Some CPE programs may be limited by geography or firm characteristics.)

- Full participation in CAMICO's **dividend program**. The timing, amount and method of allocating dividends amongst *Insureds* are determined by and at the discretion of the Board of Directors.

- The *Named Insured* has the right to *Extended Reporting Coverage* for a period of up to three years as more fully described in Article V. of the policy. The *Named Insured* may request *Extended Reporting Coverage* for a longer period of time. CAMICO, at its option, may agree to offer such coverage.

- No cost unlimited *Extended Reporting Coverage* is available for qualified sole practitioner and two-professional firms due to Death, Disability or Retirement. See Article V. of the policy.

CAMICO urges you to take advantage of these additional included benefits so that, together, we can reduce the cost of claims and increase the effectiveness of your firm.

## NOTICE

This insurance policy is a "claims made and reported" policy. This insurance applies only to *Claims* that are first made and reported to the Company during the *Policy Period*, or that are first made and reported to the Company during an *Extended Reporting Coverage* period, if purchased.

This policy does not cover prior acts unless specifically included. The Company will not indemnify or defend *Claims* arising from acts, errors or omissions which occurred prior to the policy's *Retroactive Date*.

This policy includes *Claim Expenses* and the *Insured's* Deductible within the Limits of Liability. The payment of *Claim Expenses* reduces the Limits of Liability available to pay *Damages* unless prohibited by applicable state law or amended by endorsement.

This policy contains additional restrictions on coverage. Please review this policy carefully, including the Declarations and all endorsements.

# POLICY TABLE OF CONTENTS

I.  INSURING AGREEMENTS .................................................................................... 1
    A.  Coverage for *Damages* and Reporting Requirements  ............................. 1
    B.  Defense and Settlement of *Claims*  ...................................................... 1
    C.  Limits of Liability, Sub-Limits and Deductibles  ................................... 2
    D.  Supplementary Policy Benefits  .......................................................... 3
    E.  Policy Territory  ................................................................................ 3

II.  WHO IS AN *INSURED* .......................................................................................... 3

III.  EXCLUSIONS  ...................................................................................................... 4

IV.  DEFINITIONS ........................................................................................................ 5

V.  *INSURED'S* RIGHT TO *EXTENDED REPORTING COVERAGE*  ............................. 7
    A.  *Extended Reporting Coverage*  .......................................................... 7
    B.  Retirement, Permanent Disability, or Death - Unlimited Period  ............. 7
    C.  Non-Renewal or Cancellation – Three-Year Period  ............................. 7
    D.  Right of *Qualifying Partner* to Purchase *Extended Reporting Coverage*  ................. 8
    E.  Additional Definitions Applicable to This Section  ............................... 8

VI.  POLICY CONDITIONS ........................................................................................ 8
    A.  *Insured's* Duties Upon Notice of *Claim* or *Potential Claim*  ............... 8
    B.  Innocent *Insured*  ............................................................................. 9
    C.  Transfer and Assignment of *Insured's* Rights and Duties  ................... 9
    D.  Legal Action Against the Company  ................................................... 10
    E.  Other Insurance  .............................................................................. 10
    F.  Cancellation or Non-Renewal  .......................................................... 10
    G.  Change in Risk  ............................................................................... 10
    H.  Bankruptcy  .................................................................................... 10
    I.  Mutual Policy Provisions: Dividends, Voting, Policy Non-Assessable ...................... 10
    J.  Entire Contract  ............................................................................... 11

# ACCOUNTANTS PROFESSIONAL LIABILITY INSURANCE POLICY

In consideration of the *Named Insured's* payment of premium and Deductible(s), and in reliance upon the *Named Insured's* statements made in the original application and all renewal or supplemental applications, all of which are incorporated into this policy by this reference, CAMICO Mutual Insurance Company ("the Company") agrees with the *Named Insured* as follows:

## I.    INSURING AGREEMENTS

**A.    Coverage for *Damages* and Reporting Requirements**

1.    The Company will pay those sums that an *Insured* becomes legally obligated to pay as *Damages* because of a *Claim* arising out of an *Insured's* negligent act, error or omission in rendering or failing to render *Professional Services* performed after the *Retroactive Date* and before the end of the *Policy Period*, provided that:

(a)    the *Claim* was first made against the *Insured* and reported to the Company during the same *Policy Period*; and

(b)    the *Claim* does not arise from circumstances which, prior to the effective date of the *Policy Period*, any *Insured* might reasonably expect would be the basis for a *Claim*; and

(c)    the *Claim* was not reported to any professional liability insurer, including the Company, prior to the effective date of the *Policy Period* identified in the policy's Declarations.

An act, error or omission which is continuing in nature shall be deemed to have occurred only on the date on which that act, error or omission began and not on any subsequent date. *Multiple Acts, Errors or Omissions* shall be deemed to have occurred only on the date that the earliest of those acts, errors or omissions began and not on any subsequent date. A *Claim* is deemed made and reported to the Company on the date the first of the *Multiple Acts, Errors or Omissions* forming the *Claim* is reported to the Company.

2.    If an *Insured* first becomes aware of a *Potential Claim* during the *Policy Period* and provides the Company with written notice as described in section VI. POLICY CONDITIONS, A. *Insured's* Duties Upon Notice of *Claim* or *Potential Claim*, paragraph 1., then any *Claim* that may be made later against an *Insured* arising from those acts, errors or omissions will be deemed reported to the Company on the date the Company received the written notice of the *Potential Claim*.

3.    If any *Insured* becomes aware of a *Claim* during the *Policy Period* and reports that *Claim* to the Company within thirty (30) days of the date of expiration of that *Policy Period*, that *Claim* shall be deemed reported to the Company on the last day of that *Policy Period*.

**B.    Defense and Settlement of *Claims***

1.    The Company has the right and duty to defend and settle *Claims* alleging *Damages* potentially covered by this Policy, even if the *Claim* is groundless, false or fraudulent. The Company has the right to appoint counsel to defend a *Claim*, and the right to investigate and negotiate settlement of any *Claim*.

2.    The Company will not settle any *Claim* without the *Named Insured's* written consent. If the *Named Insured* withholds its consent to any settlement recommended by the Company and elects to contest a *Claim* or continue the legal proceedings, then the Company's liability for that *Claim* will not exceed: (1) the

amount of the recommended settlement plus *Claim Expenses* incurred up to the date the *Named Insured* withheld its consent, or (2) the remaining Limit of Liability, whichever is less.

3.    The Company will cease defending and/or paying *Claim Expenses* when the applicable Limit of Liability has been exhausted by payment of *Damages* or *Claim Expenses*.

**C.    Limits of Liability, Sub-Limits and Deductibles**

1.    Limit of Liability – Per *Claim* and Sub-Limits

The maximum amount payable by the Company for *Damages* and *Claim Expenses* for each covered *Claim* is the Per *Claim* Limit of Liability stated in the Declarations, less the Per *Claim* Deductible, subject to the following sub-limits:

(a)    The maximum amount payable by the Company for *Damages* and *Claim Expenses* for each covered *Claim* arising from, related to or in connection with any *Tax Shelter Investment* shall be $100,000 in excess of the Per *Claim* Deductible.

(b)    The maximum amount payable by the Company for *Damages* and *Claim Expenses* for each covered *Claim* arising from, related to or in connection with any *Insured's* misappropriation, misuse, theft or embezzlement of funds shall be $100,000 in excess of the Per *Claim* Deductible.

A single Per *Claim* Limit of Liability applies to a *Claim* arising from *Multiple Acts, Errors or Omissions*, regardless of the number of claimants, lawsuits, or *Insureds* involved.

2.    Limit of Liability – Policy Aggregate and Aggregate Sub-Limits

The maximum amount payable by the Company for *Damages* and *Claim Expenses* for all covered *Claims* made and reported during the *Policy Period* is the Policy Aggregate Limit of Liability stated in the Declarations, less the Policy Aggregate Deductible, subject to the following Aggregate sub-limits:

(a)    The maximum amount payable by the Company for *Damages* and *Claim Expenses* for all covered *Claims* made and reported during the *Policy Period* arising from, related to or in connection with *Tax Shelter Investments* shall be $100,000 in excess of the Per *Claim* Deductible.

(b)    The maximum amount payable by the Company for *Damages* and *Claim Expenses* for all covered *Claims* made and reported during the *Policy Period* arising from, related to or in connection with misappropriations, misuses, thefts or embezzlements of funds by *Insureds* shall be $100,000 in excess of the Per *Claim* Deductible.

3.    Deductible – Per *Claim*

The *Named Insured* shall pay the Per *Claim* Deductible, in the amount stated on the Declarations, for *Claim Expenses* and *Damages* resulting from each *Claim*.  The *Named Insured* is responsible for reimbursing the Company for the Deductible.

4.    Deductible – Policy Aggregate

When the *Named Insured* has purchased an Aggregate Deductible, the maximum amount of Deductible(s) payable by the *Named Insured* with respect to all covered *Claims* first made against an *Insured*

and reported to the Company during the *Policy Period* is the amount of the Policy Aggregate Deductible stated in the Declarations.

     5.     Expenses for *Potential Claims*

Any expenses incurred by the Company on behalf of an *Insured* prior to a *Claim* being made are not chargeable against the Per *Claim* Deductible or against the applicable Limit of Liability.

     6.     Reimbursement of the Company

If the Company pays any *Claim Expenses* or *Damages* within the Per *Claim* Deductible or Aggregate Deductible or in excess of the applicable Limit of Liability, the *Named Insured* shall reimburse the Company these amounts within thirty (30) days of the Company's request. All *Insureds* are jointly and severally liable for reimbursement of these amounts to the Company.

**D.     Supplementary Policy Benefits**

     1.     Regulatory and/or Disciplinary Proceedings

The Company will defend an *Insured* at regulatory proceedings and/or at disciplinary hearings before any entity responsible for regulating the practice of accountancy. The maximum amount payable by the Company pursuant to this paragraph for all attorney fees and costs incurred pursuant to this paragraph is $5,000 per *Policy Period*. Amounts paid on behalf of an *Insured* pursuant to this paragraph are not chargeable against the Deductible or the Limits of Liability.

The Company will not indemnify any *Insured* for any monetary assessment or penalty that may be levied against any *Insured* as a result of any regulatory proceedings and/or disciplinary hearings.

     2.     Deductible Reduction

The Company will reduce the *Named Insured's* applicable Per *Claim* Deductible by fifty percent (50%), up to a maximum of $50,000, under the following circumstances: (a) when any *Insured* reports a *Potential Claim* to the Company prior to the *Claim* being made against the *Insured*; or (b) when the *Named Insured* uses formal mediation to seek a resolution of a *Claim*.

However, no reduction in the Per *Claim* Deductible will be available for either: (a) any *Claim* arising from, related to or in connection with any *Tax Shelter Investment*, or (b) any *Claim* arising from, related to or in connection with any *Insured's* misappropriation, misuse, theft or embezzlement of funds.

     3.     Per Diem Reimbursement

The Company will pay $300 per day to the *Named Insured*, up to a maximum payment of $6,000 per *Claim*, to compensate an *Insured* for attendance at mediation, arbitration or trial proceedings at the Company's request.

**E.     Policy Territory**

This insurance applies to *Claims* made anywhere in the world.

## II.    WHO IS AN *INSURED*

Each of the following *Persons* is an *Insured,* but only while performing *Professional Services* for the benefit of the *Named Insured* or a *Predecessor Firm* on or after the *Retroactive Date*:

(a)    The *Named Insured* identified in the Declarations or in an endorsement.

(b)    A current or former owner, partner, shareholder or employee of a *Named Insured*.

(c)    Any *Person* who, during the *Policy Period*, becomes an owner, partner, shareholder or employee of a *Named Insured*.

(d)    Temporary staff or a contract employee of a *Named Insured*, but only for *Professional Services* performed on behalf of and under the direct supervision of a *Named Insured*.

(e)    A *Predecessor Firm*.

(f)    A *Person* acquired by or merged with a *Named Insured* during the *Policy Period*, but only for *Professional Services* provided after the acquisition or merger.

(g)    The legal representative of an *Insured*, but only to the extent of that *Insured's* rights and duties under this policy.

### III.    EXCLUSIONS

This policy does not apply to:

(a)    **Intentional Misconduct:**  Any *Claim* based on or arising out of a dishonest, fraudulent, malicious or criminal act, error or omission of any *Insured*.  The Company will defend but not indemnify an *Insured* with respect to: (i) any *Claim* alleging an *Insured* participated in, aided or abetted in a civil conspiracy, and (ii) any *Claim* alleging an *Insured* has violated any state or federal statutes prohibiting financial elder abuse.

(b)    ***Bodily Injury/Property Damage***:  Any *Claim* based on or arising from *Bodily Injury* or *Property Damage*, but this exclusion shall not apply to any *Claim* seeking *Damages* for humiliation or emotional distress based upon allegations of *Defamation*.

(c)    ***Claims* By An *Insured***:  Any *Claim* made by an *Insured* or a *Related Individual* against an *Insured*.

(d)    ***Insured* Acting In Another Capacity:**  Any *Claim* in connection with or arising out of the services of any *Person* who is an *Insured* acting as an employee, officer or director of any company, business, entity or charitable organization other than the *Named Insured*.

(e)    **Employment Practices Liability:**  Any *Claim* in connection with or arising out of any *Insured's* employment obligations, decisions, practices or policies as an employer, including, but not limited to, acts of discrimination, humiliation or harassment and/or acts in violation of the Americans with Disabilities Act.

(f)    **Other Business Entities:**  Any *Claim*, whether or not related to *Professional Services,* made by, in the right of, against, in connection with or arising out of any entity not named in the Declarations in which:

    1.    any *Person* who is an *Insured* (or an *Affiliate* or *Related Individual* of that *Person*) is or was at any time managing, controlling or operating the entity; or

    2.    the aggregate ownership of all *Persons* who are *Insureds* (including *Affiliates* and *Related Individuals* of such *Persons*) at any one time was or is more than twenty percent (20%).

(g)    ***Claims* Seeking Return of *Insured's* Fees:**  That part of any *Claim* seeking the return of or reimbursement of fees for *Professional Services*.

(h)    **Punitive or Exemplary Damages:**   Indemnity of any punitive or exemplary damages, fines, sanctions, penalties or multiplied damages (whether doubled, trebled or otherwise), unless required by law.

(i)    ***Claims* Following *Insured's* Suit For Fees:**   Any *Claim* made by any *Person* or entity after an *Insured* has sued such *Person* or (*Affiliate* of such *Person*) to obtain payment of fees for *Professional Services,* unless that *Insured* has consulted with the Company prior to filing the suit.  If the *Insured* fails to consult with the Company prior to filing the suit, then the *Named Insured* agrees to pay fifty percent (50%) of the first $50,000 in *Claim Expenses* and/or *Damages* incurred with respect to such *Claim*.  This fifty percent (50%) co-pay obligation: (1) is separate from and in addition to the *Named Insured's* obligation to pay the applicable Deductible pursuant to section I. INSURING AGREEMENTS, C. Limits of Liability, Sub-Limits and Deductibles, and/or (2) precedes and is separate from the terms of any endorsement modifying provisions regarding payment of *Claim Expenses* from within the applicable Limits of Liability and from the terms of any endorsement providing a Separate Defense Limit.  This exclusion does not eliminate coverage for, and the fifty percent (50%) co-pay obligation is not triggered by, any *Claim* made after an *Insured's* use of arbitration to resolve a fee dispute with the *Person* making the *Claim*.

(j)    **Products Liability:**   Any *Claim* in connection with or arising out of the use of, or existence of any condition in or a warranty of, products sold or distributed by an *Insured.*

## IV.    DEFINITIONS

Wherever used in this policy, the words or phrases in *italics* have special meanings:

(a)    An *Affiliate* of a specified *Person* means a *Person* that directly, or indirectly through one or more intermediaries, controls or is controlled by or is under common control with the *Person* specified.

(b)    *Bodily Injury* means bodily injury, sickness, disease, mental illness, emotional distress or humiliation sustained by a natural person, including death resulting from any of these at any time.

(c)    A *Claim* means a demand received by any *Insured* for money or services, and includes the service of suit(s), a request that an *Insured* agree to waive a legal right or sign an agreement to toll a statute of limitations, or a demand for arbitration.  A *Claim* also includes two or more *Claims* arising out of or resulting from a single act, error or omission in rendering *Professional Services*, or from *Multiple Acts, Errors or Omissions* in rendering *Professional Services*, whether such demands are made: (1) against one or more *Insureds*, (2) by one or more *Persons*, or (3) during one or more *Policy Periods*.

(d)    *Claim Expenses* are the fees charged by an attorney designated by the Company to defend any *Insured*, and all other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a *Claim,* if incurred by the Company or by an *Insured* at the Company's request.  *Claim Expenses* do not include: (1) salaries of the Company's employees or independent adjusters, or (2) any fees, costs or expenses incurred by an *Insured* without the Company's consent.

(e)    *Damages* means a monetary judgment or award, or sums paid in settlement, but does not include: (1) any fine, sanction, penalty, punitive or exemplary damages, or multiplied damages (whether doubled, trebled or otherwise); (2) reimbursement of any *Insured's* fees for *Professional Services*; or (3) *Claim Expenses*.

(f)    *Defamation* means the publication or utterance of a libel or slander or other defamatory or disparaging material or a publication or utterance in violation of an individual's right of privacy.

(g)    *Extended Reporting Coverage* is an optional coverage offered by the Company under the terms and conditions stated in section V. *INSURED'S* RIGHT TO *EXTENDED REPORTING COVERAGE* of this policy

and the *Extended Reporting Coverage* endorsement issued by the Company. *Extended Reporting Coverage* provides a period of time after the end of the *Policy Period* for reporting a *Claim* arising out of any negligent acts, errors or omissions occurring prior to the end of the *Policy Period* and otherwise covered by this policy.

(h)　　An *Insured* means the *Named Insured* and any *Person* who qualifies as an *Insured* under section II. WHO IS AN *INSURED*.

(i)　　*Multiple Acts, Errors or Omissions* means all acts, errors or omissions in rendering *Professional Services* that are logically or causally connected by any common fact(s), circumstances, situation, transaction(s), event(s), advice or decision(s).

(j)　　The *Named Insured* is the *Person* identified on the Declarations attached to this policy.

(k)　　A *Person* means any natural person or legal entity.

(l)　　The *Policy Period* is the period of time which begins on the effective date stated on the Declarations and ends on the renewal, termination, expiration or cancellation of this policy, and specifically excludes any *Extended Reporting Coverage*.

(m)　　A *Potential Claim* is an event or circumstances that any *Insured* might reasonably expect would be the basis for a *Claim.*

(n)　　*Predecessor Firm* is: (i) any firm, some or all of whose partners or shareholders have joined the *Named Insured*, provided such partners or shareholders produced over fifty percent (50%) of the prior firm's annual gross billings and such billings have been assigned to the *Named Insured*, or (ii) any sole proprietor who joined the *Named Insured* and who has assigned over fifty percent (50%) of the billings from the former sole proprietorship to the *Named Insured.*

(o)　　*Professional Services* are any professional services performed by an *Insured* as long as the fees or commissions, if any, or other benefits from such services inure to the benefit of the *Named Insured.* *Professional Services* also includes any *Insured's* services as a member of a formal accreditation, standards review, or other similar professional board or committee that is related to the accounting profession, including services ordinarily performed or advice given in connection with programs sponsored by the American Institute of Certified Public Accountants or any state society of Certified Public Accountants.

(p)　　*Property Damage* means physical injury to, conversion of, or destruction of tangible property, including the loss of use of tangible property.

(q)　　*Related Individual* means the spouse, children, siblings, parents and/or grandparents of any *Insured*, and any trust or estate of which any of them or any *Insured* is a beneficiary.

(r)　　The *Retroactive Date,* stated in the Declarations, is the earliest date from which this policy provides coverage for *Professional Services.*

(s)　　*Tax Shelter Investment* means:

　　　1.　　(i) a Treasury Regulation §1.6011-4(b)(2) "reportable transaction"; **OR**

　　　　　　(ii) any investment or other arrangement where (a) the investment or other arrangement actually generates or (b) representations made as part of the investment or other arrangement's written sale offering indicate that the investment or arrangement will generate taxable income exclusions, tax deductions, or tax credits exceeding the

investment or other arrangement's required capital contribution by at least two to one (2:1); **OR**

(iii)  any other investment, plan or arrangement having tax avoidance or evasion as its primary purpose.  An investment, plan or arrangement will have a primary tax avoidance or evasion purpose when that purpose exceeds any other purpose of the investment, plan or arrangement;

**AND**

2.    Any *Insured* receives or expects to receive any compensation or other payment, whether or not related to *Professional Services* rendered, which is a commission, profit-sharing, participation, payment in securities, success fee, or similar kind of payment dependent upon the completion or success of the transaction.

### V.    INSURED'S RIGHT TO *EXTENDED REPORTING COVERAGE*

**A.    *Extended Reporting Coverage***

The *Named Insured* may purchase *Extended Reporting Coverage*, as described below, because of any of the following Events:

1.    A *Named Insured* who is a sole proprietor becomes *Retired* or *Permanently Disabled,* or a two-professional firm's business is *Discontinued* because one of the professionals becomes *Retired* or *Permanently Disabled*;

2.    A *Named Insured* who is a sole proprietor dies, or a two-professional firm's business is *Discontinued* because one of the professionals dies; or

3.    The *Named Insured* cancels or non-renews this policy or the Company cancels or non-renews this policy for any reason other than non-payment of premium, and there are no amounts owed by the *Named Insured* to the Company, including sums due for premium or Deductibles.

The Company will determine the premium for *Extended Reporting Coverage* upon receipt of the *Named Insured's* request.  The Limits of Liability for the *Extended Reporting Coverage* are separate from and shall not exceed the Limits of Liability of the last policy in effect.

**B.    Retirement, Permanent Disability, or Death – Unlimited Period**

1.    If a firm is *Discontinued* for reasons described in section V.A.1. or V.A.2., above, then within thirty (30) days of such discontinuation the *Named Insured* or the deceased *Insured's* estate has the right to purchase unlimited *Extended Reporting Coverage* for *Claims* first made against the *Named Insured* and reported to the Company after the end of the *Policy Period* arising out of any negligent act, error or omission occurring prior to the end of the *Policy Period* and otherwise covered by this policy.

2.    *Extended Reporting Coverage* under this section V.B. is not available if the right to *Extended Reporting Coverage* is available and is purchased by the *Named Insured* under section V.C., below.

**C.    Non-Renewal or Cancellation – Three-Year Period**

1.    If this policy is cancelled or non-renewed by the *Named Insured* or by the Company for any reason described in section V.A. above, within thirty (30) days the *Named Insured* has the right to purchase *Extended Reporting Coverage* for a three-year period for *Claims* first made against an *Insured* and reported to

the Company after the end of the cancelled or non-renewed *Policy Period* arising out of any negligent act, error or omission occurring prior to the end of the *Policy Period* and otherwise covered by this policy.

2.     *Extended Reporting Coverage* under this section V.C. is not available if the right to *Extended Reporting Coverage* is available and is purchased by the *Named Insured* under section V.B., above.

**D.     Right of *Qualifying Partner* to Purchase *Extended Reporting Coverage***

If the *Named Insured* fails, or has no right, to purchase *Extended Reporting Coverage*, any *Qualifying Partner* may purchase *Extended Reporting Coverage* providing coverage solely to the *Qualifying Partner*. The *Named Insured* is responsible for notifying any *Qualifying Partner(s)* of any change in the *Named Insured's* coverage.

**E.     Additional Definitions Applicable to This Section**

1.     "*Retired*" means the *Insured*: (a) has reached age 55, and (b) has completely ceased providing *Professional Services*.

2.     "*Permanently Disabled*" means the *Insured* is medically judged to be totally and permanently unable to provide *Professional Services*, and has sold or discontinued his/her certified public accounting practice as a result of the disability.  Proof of such disability must be provided upon the Company's request.

3.     The business of a two-professional firm is "*Discontinued*" when: (a) both professionals are *Retired*, are *Permanently Disabled* or have died, or (b) one professional has *Retired*, has become *Permanently Disabled* or has died, and the other professional has sold the firm's business to an unrelated party.

4.     A "*Qualifying Partner*" is a former partner or shareholder, or his/her legally appointed representative, who was not a partner or shareholder of the *Named Insured* on the date the right to purchase *Extended Reporting Coverage* lapsed or on the date unpaid premiums or other amounts became due to the Company from the *Named Insured*.

## VI.     POLICY CONDITIONS

**A.     *Insured's* Duties Upon Notice of *Claim* or *Potential Claim***

As a condition precedent to coverage, an *Insured* must:

1.     Promptly notify the Company or its authorized representative of any *Claim* or *Potential Claim*, and include the following information, if available:

(a)     The name and address of the claimant or potential claimant, and all other involved individuals;

(b)     A description of the *Professional Services* provided, or that should have been provided, and the *Damages* that may result;

(c)     The *Insured's* explanation of why the *Claim* was made or why the *Potential Claim* may become a *Claim*.

2.     Upon receipt of a *Claim*: (i) immediately send to the Company copies of any demands, notices, summonses or legal papers received in connection with the *Claim*; (ii) authorize the Company to obtain records and other information; and (iii) cooperate with the Company in the investigation, defense, and settlement of the *Claim*.

      3.     Upon request, assist the Company in enforcing any right against any *Person* that may be liable to an *Insured* because of *Damages* to which this insurance applies.

      4.     Refuse, except at the *Named Insured's* own cost, to admit any liability, assume any *Damages*, voluntarily make any payments, or incur any *Claim Expenses* without the prior written consent of the Company.

      5.     Upon request, provide information relevant to any *Claim,* and submit to examination(s) by the Company's representative, under oath if requested, regarding any information relevant to any *Claim.*

**B.    Innocent *Insured***

      1.     If coverage for a *Claim* would be void, excluded, suspended or lost as a result of any *Insured's* acts, errors or omissions excluded from coverage by section III. EXCLUSIONS, (a) Intentional Misconduct, then this policy's coverage will continue to apply to any innocent *Insured* who did not personally commit, participate, or acquiesce or remain passive after having acquired personal knowledge of such acts, errors or omissions, provided that upon acquiring personal knowledge, the innocent *Insured* promptly gives notice to the Company in accordance with section I. INSURING AGREEMENTS, A. Coverage for *Damages* and Reporting Requirements, and section VI. POLICY CONDITIONS, A. *Insured's* Duties Upon Notice of *Claim* or *Potential Claim*.

      2.     If any coverage for a *Claim* would be void, excluded, suspended or lost by as a result of any *Insured's* failure to comply with the reporting requirements of section I. INSURING AGREEMENTS, A. Coverage for *Damages* and Reporting Requirements, and section VI. POLICY CONDITIONS, A. *Insured's* Duties Upon Notice of *Claim* or *Potential Claim*, then this policy's coverage will continue to apply to any innocent *Insured* who did not fail to comply with the reporting requirements of this policy, provided that:

      (a)     the innocent *Insured* promptly gives notice to the Company in accordance with the provisions of section I. INSURING AGREEMENTS, A. Coverage for *Damages* and Reporting Requirements, and section VI. POLICY CONDITIONS, A. *Insured's* Duties Upon Notice of *Claim* or *Potential Claim*, and

      (b)     the *Named Insured* is continuously insured by the Company through the date upon which notice is received by the Company.

      3.     These provisions do not extend coverage to any *Insured* when coverage is void, excluded, suspended or lost because of any other *Insured's* non-compliance with disclosure of information required on any policy application or policy renewal application.

**C.    Transfer and Assignment of *Insured's* Rights and Duties**

      1.     No *Insured* may transfer or assign any *Insured's* rights or interest in, or duties under, this policy without the Company's written consent.

      2.     If the Company makes any payment for *Damages* and/or *Claim Expenses*, it shall be subrogated to all of the *Insured's* rights of recovery against anyone, and the *Insured* shall do whatever is necessary to secure such rights. After becoming aware of a *Claim* or a *Potential Claim*, no *Insured* shall do anything to prejudice the Company's subrogation rights.

      3.     Any monetary recoveries will be distributed between the *Named Insured* and the Company in proportion to the amounts paid by the *Named Insured* within the Deductible – Per *Claim* and by the Company within the Limits of Liability.

**D.      Legal Action Against the Company**

1.      No *Insured* shall seek to join the Company as a party to a suit that seeks *Damages* from an *Insured* or sue the Company unless: (a) all of the terms and conditions of this policy have been met, and (b) the amount of the *Insured's* obligation to pay *Damages* has been finally determined either by judgment against the *Insured* after an actual contested trial or by written agreement of the *Insured* and the claimant with the prior written consent of the Company.

2.      If an *Insured* and the Company dispute whether this policy provides coverage for a *Claim*, all *Insureds* agree that the parties will meet with a qualified mediator in a good faith effort to negotiate a resolution of the dispute prior to the initiation of any legal proceeding.  The mediation will continue until the dispute is resolved, or until the mediator notifies the parties that it is unlikely that the dispute will be resolved through mediation, or until any party elects to end the mediation after a minimum of thirty (30) days after the first mediation session.

**E.      Other Insurance**

This insurance shall be excess over any other valid insurance available to any *Insured*, whether such insurance is stated to be primary, contributory, excess, contingent or otherwise.  However, this condition does not apply if the other insurance was purchased specifically to apply in excess of this insurance and identifies this policy as primary insurance.

**F.      Cancellation or Non-Renewal**

1.      The Company may cancel this policy for any reason consistent with state law, as described in the State Endorsement issued with this policy.

2.      The *Named Insured* may cancel this policy by written notice to the Company accompanied by surrender of the policy to the Company or any of the Company's authorized agents, or by mailing written notice to the Company at the location stated in an endorsement issued with this policy.  The written notice must state the date on which the *Named Insured* requests cancellation to become effective.  The mailing of notice by the *Named Insured* shall be sufficient proof of notice.  The time of surrender shall become the end of the *Policy Period*.  Delivery (where permitted by law) of such written notice by the *Named Insured* shall be equivalent to mailing.

**G.      Change in Risk**

The Company has the right to assess and charge an additional premium if, in the reasonable judgment of the Company, there is a significant increase in the size or other risk characteristics of the *Named Insured*.

**H.      Bankruptcy**

The bankruptcy or insolvency of the *Named Insured* will not relieve the Company or any *Insured* of any obligations under this policy.

**I.      Mutual Policy Provisions: Dividends, Voting, Policy Non-Assessable**

1.      The *Named Insured* is a member of the Company and shall participate in the distribution of dividends fixed and determined by the Board of Directors.

2.      The *Named Insured* is entitled to vote, either in person or by proxy, at all meetings of the Company, pursuant to the Bylaws and Articles of Incorporation of the Company.

3.      This policy is not assessable.

**J.    Entire Contract**

By accepting this policy, each *Insured* agrees that the statements in the Declarations and in each application for renewal or supplementary application are his/her agreements and representations, that this policy is issued in reliance upon the truth of such representations, and that this policy embodies all agreements existing between each *Insured* and the Company or any of its agents relating to this insurance.

**IN WITNESS WHEREOF**, the Company has caused this policy to be signed by its President and a Secretary and countersigned on the Declarations page by a duly authorized representative of the Company.

**PRESIDENT**                                  **SECRETARY**



## CAMICO®
### MUTUAL INSURANCE COMPANY

## STATE ENDORSEMENT - SOUTH CAROLINA

Effective Date:  01/28/2011                                      Policy Number:  SCL103936-06

### THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE
### CAMICO PROFESSIONAL LIABILITY POLICY.  PLEASE READ CAREFULLY.

A.  The following is added to VI. POLICY CONDITIONS, F. Cancellation or Non-Renewal:

**1.      Cancellation**

This Policy may be cancelled for any reason consistent with South Carolina law, as is now in effect or hereafter amended.

**Cancellation of Policies in Effect for Less than 90 Days**

If this Policy has been in effect for less than 90 days and is not a renewal of a previously existing policy, then the Company may cancel this Policy if written notice stating the reason for the cancellation is mailed or delivered to the *Named Insured* and the agent of record, if any, at their addresses shown in the Policy, or if not reflected therein, at their last known addresses, at least:  (i) 10 days before the effective date if for nonpayment of premium, and (ii) 30 days before the effective date if for any other reason.  Proof of mailing is sufficient proof of notice.

**Cancellation of Policies in Effect for More than 90 Days**

If this Policy has been in effect for 90 days or more, then the Company may cancel the Policy prior to the expiration date for one or more of the following conditions which have occurred after the effective date of the Policy or renewal:

    (1)  nonpayment of premium;
    (2)  material misrepresentation of fact which, if known to the Company, would have caused the Company not to issue the Policy;
    (3)  substantial change in the risk assumed, except to the extent that the Company should reasonably have foreseen the change or contemplated the risk in writing the Policy;
    (4)  substantial breaches of contractual duties, conditions, or warranties; or
    (5)  loss of the Company's reinsurance covering all or a significant portion of the Policy insured, or where continuation of the Policy would imperil the Company's solvency or place the Company in violation of the insurance laws of South Carolina, as set forth in South Carolina law.

If the Company cancels this Policy, the Company will deliver or mail the notice of cancellation accompanied by a statement of the reason for cancellation to the *Named Insured* and agent of record, if any, at their addresses shown in the Policy, at least: (i) 10 days before the effective date if for nonpayment of premium, or (ii) 30 days before the effective date if for any other reason.  Proof of mailing is sufficient proof of notice.

2.    **Non-Renewal**

This Policy may be non-renewed for any reason consistent with South Carolina law as is now in effect or hereafter amended. If the Company elects not to renew this Policy, the Company will mail or deliver a written notice of non-renewal accompanied by a statement of the reason for non-renewal to the *Named Insured* and agent of record, if any, at their addresses shown in the Policy, at least 30 days before the expiration date. Proof of mailing is sufficient proof of notice.

3.    **Renewal**

If the Company offers to renew the Policy, the renewal terms and statement of premium due will be furnished to the *Named Insured* and agent of record, if any, at least 30 days in advance of the Policy's renewal date. If the Company does not meet the notice requirements, the *Named Insured* may cancel the Policy within 30 days following receipt of the renewal notice. Earned premium for any period of coverage will be calculated pro rata based upon the premium rate of the existing Policy.

B. The following is added to VI. POLICY CONDITIONS:

**Notice to the Company**

Whenever an *Insured* is required to provide written notice to the Company, such written notice shall be given to:

CAMICO Mutual Insurance Company
Claims Department
1235 Radio Road
Redwood City, California 94065

_____
Authorized Representative

 **CAMICO**

## EMPLOYMENT PRACTICES DEFENSE ENDORSEMENT

*Named Insured*:  Jackson & Hill, LLC                          Effective Date:    01/28/2011

Policy Number:  SCL103936-06

### THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE CAMICO MUTUAL INSURANCE COMPANY ACCOUNTANTS PROFESSIONAL LIABILITY INSURANCE POLICY.  PLEASE READ CAREFULLY.

In consideration of the *Named Insured's* payment of additional premium, and in reliance upon the *Named Insured's* statements in the application for this endorsement, incorporated herein by reference, CAMICO Mutual Insurance Company ("the Company") agrees with the *Named Insured* as follows:

The following section is added to I. INSURING AGREEMENTS:

**Defense Coverage for Employment Practices**

1.        **Payment of *Claim Expenses*:**  The Company will reimburse the *Named Insured* for *Claims Expenses* incurred in defense of any *Claim* alleging *Damages* against any *Insured*, even if groundless, false or fraudulent, arising from alleged:

  a. wrongful termination,
  b. sexual harassment, or
  c. employment discrimination, including discrimination on the basis of race, national origin, ancestry, sex, marital status, physical or mental handicap, religion, age, sexual preference or pregnancy.

The *Claim* must be first made against the *Insured* and reported to the Company after the Effective Date of this endorsement and during the *Policy Period* AND must be the result of any act, error or omission of any *Insured* which first commenced after the *Retroactive Date* of this Policy.  An act, error or omission which is continuing in nature shall be deemed to have occurred only on the date on which that act, error or omission began and not on any subsequent date.  *Multiple Acts, Errors or Omissions* shall be deemed to have occurred on the date on which the earliest of such acts, errors or omissions began.  A *Claim* is deemed made and reported to the Company on the date of the first of the *Multiple Acts, Errors or Omissions* forming the *Claim* is reported to the Company.

2.        **Limit of Liability for Employment Practices *Claim Expenses*:**  The maximum amount payable by the Company for Claim Expenses for all Claims covered by this endorsement is $100,000.  The Company's reimbursement of *Claim Expenses* pursuant to this endorsement is subject to the *Named Insured's* co-payment of 10% of the covered *Claim Expenses*: the Company shall pay 90% and the *Named Insured* shall pay 10% of all *Claim Expenses* incurred by all *Insureds* under the coverage provided by this endorsement.  This limit of liability for Employment Practices *Claim Expenses* is separate from the limits of liability applicable to I. INSURING AGREEMENTS, A. Coverage For *Damages* and Reporting Requirements, stated in the Declarations.  No Deductible applies to the coverage provided by this endorsement.

3.    **Selection of Counsel:**  The *Named Insured* shall have the right to appoint counsel to defend a *Claim* covered by this endorsement.

4.    **Additional Definitions:**  For the purposes of coverage provided by this endorsement, the definition of *Claim Expenses* stated in IV. DEFINITIONS, paragraph (d). of the Policy is replaced by the following:

> (d).  *Claim Expenses* means fees charged by any lawyer designated by the *Named Insured*, and all other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a *Claim* covered by this endorsement.  *Claim Expenses* do not include: (1) salaries of the Company's employees or independent adjusters, or (2) any fees, costs or expenses incurred by an *Insured* prior to the date the *Claim* out of which such fees and costs arise is first reported to the Company, or (3) fees representing time spent by an *Insured* or costs incurred by an *Insured* in assisting with the handling of a *Claim*.

5.    **Coverage Period:**  The coverage provided by this endorsement is effective upon issuance, and is retroactive only to acts, errors or omissions committed after the *Retroactive Date* on the Policy Declarations. Coverage provided by this endorsement terminates upon cancellation or non-renewal of the Policy, or upon the Effective Date of *Extended Reporting Coverage* purchased by the *Named Insured*, as described in V. *INSURED'S* RIGHT TO *EXTENDED REPORTING COVERAGE* in the Policy.

6.    **Exclusions:**  The coverage provided by this endorsement does not apply:

(a)    to any *Claim* brought by any *Person* who, at any time, is or was an owner, partner or stockholder of the *Named Insured* or any *Predecessor Firm*;

(b)    to any *Claim* which is afforded coverage under any other part of this Policy.

Paragraph (e) of III. EXCLUSIONS shall not be the basis for denial of the Company's payment of *Claim Expenses* pursuant to the coverage provided by this endorsement.

7.    **Other Insurance:**  The coverage provided by this endorsement shall be excess over any other valid insurance available to any *Insured*, including any employers' liability coverage issued to the *Named Insured*, whether such insurance is stated to be primary, contributory, excess, contingent or otherwise.  However, this condition does not apply if the other insurance was purchased specifically to apply in excess of the coverage afforded by this endorsement and identifies this endorsement as underlying coverage.

All other terms, conditions and exclusions of the policy remain unchanged.

_____
Authorized Representative

 **CAMICO**

## SEPARATE DEFENSE LIMIT

*Named Insured*:    Jackson & Hill, LLC                    Effective Date:  01/28/2011

Policy Number:    SCL103936-06

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE
CAMICO MUTUAL INSURANCE COMPANY ACCOUNTANTS PROFESSIONAL LIABILITY
INSURANCE POLICY.  PLEASE READ CAREFULLY.**

In consideration of the *Named Insured's* payment of additional premium, it is agreed that Item 3 of the Declarations is amended by adding the following:

|  | Per *Claim* | Policy Aggregate |
|---|---|---|
| *Separate Defense Limit*: | $250,000 | $250,000 |

The Separate Defense Limit is an additional limit available exclusively for the payment of *Claim Expenses* and will be exhausted prior to applying the applicable Limits of Liability to the payment of *Claim Expenses*.

The Separate Defense Limit coverage shall not be available for the payment of *Claim Expenses* incurred with respect to any *Claim* for which coverage is afforded under the Limited Coverage for "Known *Claims*" endorsement.

The Separate Defense Limit is not available for the payment of *Damages*.

All other terms, conditions and exclusions of the policy remain unchanged.

_____
Authorized Representative

 **CAMICO**

### LIMITED COVERAGE FOR "KNOWN CLAIMS" ENDORSEMENT

*Named Insured*: Jackson & Hill, LLC                    Effective Date:    01/28/2011

Policy Number:  SCL103936-06

### THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE CAMICO MUTUAL INSURANCE COMPANY ACCOUNTANTS PROFESSIONAL LIABILITY INSURANCE POLICY.  PLEASE READ CAREFULLY.

In consideration of the premium paid, and in reliance upon the *Named Insured's* representations in the policy application, the Company agrees with the *Named Insured* as follows:

1.        Section I. INSURING AGREEMENTS, A. Coverage for *Damages* and Reporting Requirements of the Policy is deleted and replaced by the following:

    **A.        Coverage for *Damages* and Reporting Requirements**

        1.        The Company will pay those sums that an *Insured* becomes legally obligated to pay as *Damages* because of a *Claim* arising out of an *Insured's* negligent act, error or omission in rendering or failing to render *Professional Services* performed after the *Retroactive Date* and before the end of the *Policy Period*, provided that:

            (a)        The *Claim* was first made against the Insured and reported to the Company during the same *Policy Period*; and

            (b)        The *Claim* was not reported to any professional liability insurer, including the Company, prior to the effective date of the *Policy Period* identified in the policy's Declarations.

        An act, error or omission which is continuing in nature shall be deemed to have occurred only on the date on which that act, error or omission began and not on any subsequent date. *Multiple Acts, Errors or Omissions* shall be deemed to have occurred on the date that the earliest of those acts, errors or omissions began.

        2.        If the *Named Insured* first becomes aware of a *Potential Claim* during the *Policy Period* and provides the Company with written notice as described at section VI. POLICY CONDITIONS, A.1, then any *Claim* that may be made later against an *Insured* arising from those acts, errors or omissions will be deemed reported to the Company on the date the Company received the written notice of the *Potential Claim*.

        3.        If any *Insured* becomes aware of a *Claim* during the *Policy Period* and reports that *Claim* to the Company within 30 days of the date of expiration of that *Policy Period*, that *Claim* shall be deemed reported to the Company on the last day of that *Policy Period*.

        4.        If any *Insured* became aware of a *Claim* or a *Potential Claim* either after the *Retroactive Date* of this Policy or during the twelve (12) months prior to the Effective Date of this *Policy Period*, whichever is later, and reports that *Claim* or *Potential Claim* to the Company during the *Policy Period*, that *Claim* or *Potential Claim* shall be deemed timely reported to the Company during the *Policy Period*; however, the Limits of Liability applicable to such *Claim* or *Potential Claim* shall be limited to the amount stated in section I. INSURING AGREEMENTS, C. Limits of Liability, Sub-Limits and Deductibles, paragraph 1.c.

2.      The following subparagraph c. is added to the end of section I. INSURING AGREEMENTS, C. Limits of Liability, Sub-Limits and Deductibles, 1. Limit of Liability – Per *Claim* and Sub-Limits:

>   (c)      The maximum amount payable by the Company for *Damages* and *Claim Expenses* for each covered *Claim* reported during this *Policy Period* pursuant to section I. INSURING AGREEMENTS, A. Coverage for *Damages* and Reporting Requirements, paragraph 4., shall be either $100,000 or 25% of the Per *Claim* Limit of Liability stated on the Declarations, whichever is less. Amounts paid on behalf of an *Insured* pursuant to this paragraph are chargeable against the applicable Deductible and the Limits of Liability.

3.      Any coverage available to an *Insured* under a Separate Defense Limit endorsement, if issued with this Policy, shall not be available for the payment of *Claim Expenses* incurred with respect to any *Claim* afforded coverage by this endorsement.

All other terms, conditions and exclusions of the policy remain unchanged.

_____
Authorized Representative